FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 26, 2025

SEAN F. MCAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TABITHA S.,[1] | No.    4:24-CV-05074-EFS |
| Plaintiff, | |
| v. | **ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR FURTHER PROCEEDINGS** |
| LELAND DUDEK, Acting Commissioner of Social Security,[2] | |
| Defendant. | |

Due to fibromyalgia, piriformis syndrome of the right hip, bilateral knee costochondritis, tendinosis of the right shoulder, anxiety disorder, panic disorder, post-traumatic stress disorder (PTSD), wrist pain, adenomyosis, and anemia,

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

[2] Leland Dudek has been named the Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d) and 42 U.S.C. § 405(g), he is hereby substituted as the Defendant.

Plaintiff Tabitha S. claims that she is unable to work fulltime and appeals the ALJ denial of her claim. She appeals the denial of benefits by the Administrative Law Judge (ALJ) on the grounds that the ALJ erred by failing to consider new evidence and by discounting it as not "material," erred in assessing her testimony, improperly analyzed the medical opinions, and erred in assessing the lay witness testimony.  As is explained below, the ALJ erred in his consideration of the medical opinions and failed to develop the record properly by obtaining a medical opinion from a source that had reviewed the updated evidence.  This matter is remanded for further proceedings.

## I.    Background

In March 2021, Plaintiff filed an application for benefits under Title 16, alleging that she is disabled due to the impairments listed above. Plaintiff's claim was denied at the initial and reconsideration levels.[3]

After Plaintiff appealed denial of her application, ALJ Jesse Shumway held a telephone hearing in July 2023, at which Plaintiff appeared with her representative and testified.[4]  A vocational expert also appeared but did not testify at the hearing.[5] Prior to Plaintiff's testimony, Plaintiff's attorney noted on the record that the state agency reviewers said there was no evidence in the medical

---

[3] AR 182, 187, 192, 195.

[4] AR 59-76.

[5] *Id*.

file regarding adenomyosis but that it was submitted later and the diagnosis was first seen in the record in Exhibit 4F.[6]

Plaintiff testified that in her job at Amazon she worked as a picker in a distribution center and that entailed getting a list of items out of containers and setting them in a bucket to be shipped.[7] She said that she would be on her feet for an hour when getting the items and that throughout the nights she worked she would have to go to the medical center because she had foot pain, would tire, or would be light-headed and dizzy.[8] She said she was either on her feet during the ten-hour shift or in the medical center.[9] She said that she would be climbing ladders and lifted items up to 20 pounds that hurt her shoulder to lift.[10] She explained that she could not lift more than 20 pounds and they allowed her to ask for help.[11] Plaintiff said that she was missing work due to fatigue from anemia and that she was not picking the required number of items per hour and quit because

---

[6] AR 62.

[7] AR 64.

[8] *Id.*

[9] *Id.*

[10] AR 65.

[11] *Id.*

DISPOSITIVE ORDER - 3

1    she was going to be fired.[12] She said that eventually she was given iron infusions
2    for her hemoglobin deficiency.[13]

3         Plaintiff testified that she had a GED and was 5'6" with her weight
4    fluctuating between 101 and 105 pounds.[14] Plaintiff testified that fibromyalgia
5    causes her knees to lock up if she sits too long, to give out on her if she stands too
6    long, and to give out if she walks up and down stairs.[15] She said that her walking is
7    only slightly affected and that she can sit or stand for up to an hour without
8    symptoms.[16] She said that on a typical day she will get her children breakfast, then
9    clean a little, and then take a break.[17] She said that every half hour she alternates
10   between sitting, standing, or walking, and that she lies down if she feels light-
11   headed or dizzy.[18] Plaintiff said her children are aged 4, 7, and 10 and that she

---

[12] *Id.*

[13] AR 65-66.

[14] AR 66.

[15] *Id.*

[16] AR 67.

[17] *Id.*

[18] *Id.*

watches them when her husband is working or out.[19] She said that when he is there he will watch the children and she will help keep the house clean.[20]

Plaintiff said that she has worse days when she is menstruating and that this used to be 5-6 days a month but is more recently 10 days per month.[21] She testified that she is not functional on those days because she had severe abdominal pain because of her adenomyosis and that her children's father watches them on those days.[22] Plaintiff said that when she worked for Amazon the medical center was located in the warehouse she worked in and that in a five days work week she was in the medical center for four days a week, with three to five visits a day.[23] She said that she could work for one hour without needing a break, while she was working at Amazon and that the highest number of items she could pick an hour was 172 but she was required to pick 300 items an hour.[24]

Plaintiff testified that in recent years she had missed doctor's appointments because her doctor, who worked with the Texas Community Health Clinic, is scheduling patients on a 6-month wait and she had moved from Ridgeway, where

---

[19] *Id.*

[20] AR 68.

[21] *Id.*

[22] *Id.*

[23] AR 69.

[24] AR 69-70.

1   he is located, to Colfax.[25] She stated that she had gone to a counselor but was told

2   that there was nothing they could do for her and that she should be on

3   medication.[26] She said that most counseling centers do not take her health

4   insurance and she spoke with a doctor about seeing a therapist though Tri-City

5   Community Health.[27] She said it had been a couple years since she last saw a

6   therapist and that she was struggling and her depression was very bad but that

7   they no longer accepted her insurance.[28] Other counseling centers did not accept

8   her insurance but since her doctor took her insurance she thought they might also

9   cover mental health professionals.[29]

10      Plaintiff said she had a hard time being in a crowd because her husband had

11  isolated her from others and now she has panic attacks if she is in a crowd.[30] She

12  said she also has days when she is depressed and does not want to get out of bed.[31]

13  She said that lately her depression was worse because of stress and family issues

14

15

16  [25] AR 70.

17  [26] AR 71.

18  [27] *Id.*

19  [28] *Id.*

20  [29] *Id.*

21  [30] AR 72.

22  [31] *Id.*

23

DISPOSITIVE ORDER - 6

and that she was having a hard time concentrating and completing tasks.[32] Plaintiff said she avoids being around others and does not like to be in a group of 5 or more people.[33] She said that she will go shopping when it is not crowded and will sit in a corner by herself in waiting rooms.[34]

Plaintiff testified that she was taking iron supplements but was still exhausted two hours after waking.[35] She said she was not on medication for fibromyalgia because she had to stop taking her medication five years prior when she was pregnant and when she started it again it made her sick.[36] She said the iron supplements make her nauseous every once in a while.[37] Plaintiff said that she had stinging pain in her dominant right shoulder when she stretches her arm and has a hard time reaching above her shoulder.[38]

---

[32] *Id.*

[33] AR 73.

[34] *Id.*

[35] AR 73-74.

[36] AR 74.

[37] AR 75.

[38] *Id.*

After the hearing, the ALJ issued a decision denying benefits.[39] The ALJ found Plaintiff had rebutted the presumption of nondisabilty due to a prior denial of her claim because she alleged a worsening of her condition but also found that the new material submitted did not warrant a different finding and was therefore not material.[40]  As to medical opinions, the ALJ found:

- The opinions of state agency evaluators Robert Stuart, MD, and Glenn Gade, MD, to be generally persuasive.

- The opinions of state agency evaluators Kristine Harrison, PsyD, and John Gilbert, PhD, to be generally persuasive.

- The opinions of consultative examiner, Ioly Lewis, PMHNP, to be partially persuasive.[41]

The ALJ also considered the third-party statement of Plaintiff's partner, Farel P.[42] As to the sequential disability analysis, the ALJ found:

- Step one: Plaintiff has rebutted the presumption of continuing nondisabilty by showing "changed circumstances" due to an alleged increase in symptoms.

---

[39] AR 14-33.  Per 20 C.F.R. § 416.920(a)–(g), a five-step evaluation determines whether a claimant is disabled.

[40] AR 20-21.

[41] AR 26-27.

[42] AR 27.

- Step one: there is no "new and material" evidence relating to several finding in the prior decision, and the ALJ was bound to adopt those findings, as well as that

- Plaintiff has not engaged in substantial gainful activity since March 26, 2021, the application date.

- Step two: Plaintiff had the following severe impairments: fibromyalgia, piriformis syndrome of the right hip, bilateral knee costochondritis, tendinosis of the right shoulder, anxiety disorder, panic disorder, depressive disorder, and PTSD. Plaintiff also had the following medically determinable non-severe impairments: right wrist pain, acute pelvic inflammatory disease, adenomyosis, dysmenorrhea, ankle sprain, anemia, and plantar fasciitis.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments with consideration of Listing 1.18, 14.09, 12.04, 12.06, and 12.15.

- RFC:  Plaintiff had the RFC to perform light work with the following exceptions:

   [Plaintiff can] occasionally kneel, crouch, crawl, and climb ramps, stairs, ladders or scaffolds; frequently stoop; occasionally reach overhead with the dominant right upper extremity; avoid all exposure to extreme cold temperatures and unprotected heights; perform simple, routine tasks with a reasoning level of 3 or less; work involving only occasional changes in the work setting; work involving only occasional and superficial interaction with the public and coworkers.

- Step four: Plaintiff has no past relevant work.

- Step five: as an alternative finding, considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as a bakery worker (DOT 524.687-022), a hand packager (DOT 559.687-074), and a cleaner/housekeeper (DOT 323.687-014).[43]

Plaintiff timely requested review of the ALJ's decision by the Appeals Council and now this Court.[44]

## II.     Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error,"[45] and such error impacted the nondisability determination.[46] Substantial evidence is "more than a mere scintilla but less than a

---

[43] AR 20-28.

[44] AR 261.

[45] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g).

[46] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

1  preponderance; it is such relevant evidence as a reasonable mind might accept as

2  adequate to support a conclusion."[47]

### III.    Analysis

Plaintiff seeks relief from the denial of disability on four grounds. She

argues the ALJ erred at step two when he failed to properly consider new evidence

regarding Plaintiff's adenomyosis/endometriosis, erred when evaluating the

medical opinions, and erred in his assessment of Plaintiff's testimony and the

third-party testimony of Plaintiff's partner.  As is explained below, the Court

concludes that the ALJ consequentially erred at step two and erred in his

evaluation of the medical opinions of Dr. Stuart and Dr. Gade.

**A.    Step Two "new and material" evidence establishing severe impairments: Plaintiff established consequential error.**

Plaintiff contends the ALJ failed to properly consider the medical evidence

that established that Plaintiff's reproductive impairments and related anemia are

---

[47] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.

1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The

court "must consider the entire record as a whole, weighing both the evidence that

supports and the evidence that detracts from the Commissioner's conclusion," not

simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*,

143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does

not indicate that such evidence was not considered[.]").

severe impairments.  The Commissioner argues that the ALJ reasonably concluded that Plaintiff's reproductive issues did not constitute a severe impairment that would cause limitations in her ability to perform basis work activities.  The Court agrees with Plaintiff that the ALJ failed to properly consider the evidence regarding her reproductive issues and erred in relying on medical opinions from state agency evaluators who reviewed an incomplete medical record.

1.    Standard

There is a presumption of continuing nondisability if a claimant was previously denied disability, that disability denial was final, and there are no changed circumstances.[48]  Although the res-judicata doctrine applies to administrative decisions, the doctrine is "applied less rigidly to administrative proceedings than to judicial proceedings," particularly as to subsequent alleged disability-periods.  Therefore, to overcome the presumption of continuing nondisability, the claimant must prove "changed circumstances."  Examples of changed circumstances include "[a]n increase in the severity of the claimant's impairment," "a change in the claimant's age category," or a new issue raised by the claimant, "such as the existence of an impairment not considered in the previous application."  In addition to the changed circumstance, the new evidence must be material.[49] The test for materiality of new evidence is whether "there is a

---

[48] *Chavez v. Bowen*, 944 F.2d 691 (9th Cir. 1988); Acquiescence Ruling 97-4p(9).

[49] *Chavez*, 844 F.2d at 694; Acquiescence Ruling 97-4(9).

*reasonable possibility* that the new evidence would have changed the outcome" of the Commissioner's determination.[50] Therefore, the materiality test encompasses more than mere deterioration; it instead encompasses whether the new evidence would have changed the outcome of the ALJ's analysis supporting the denial determination.

At step two of the sequential process, the ALJ determines whether the claimant suffers from a "severe" impairment, i.e., one that significantly limits her physical or mental ability to do basic work activities.[51] This involves a two-step process: 1) determining whether the claimant has a medically determinable impairment and 2) if so, determining whether the impairment is severe.[52]

Neither a claimant's statement of symptoms, nor a diagnosis, nor a medical opinion sufficiently establishes the existence of an impairment.[53] Rather, "a physical or mental impairment must be established by objective medical evidence from an acceptable medical source."[54] Evidence obtained from the "application of a medically acceptable clinical diagnostic technique, such as evidence of reduced joint

---

[50] *Booz v. Sec'y of Health & Human Servs.*, 734, F.2d 1378, 1380 (9th Cir. 1984) (quoting *Dorsey v. Heckler*, 702 F.2d 597, 60405 (5th Cir. 1983).

[51] 20 C.F.R. §§ 404.1520(c), 416.920(c).

[52] *Id.* § 416.920(a)(4)(ii).

[53] *Id.* § 416.921.

[54] *Id.*

motion, muscle spasm, sensory deficits, or motor disruption" is considered objective medical evidence.[55] If the objective medical signs and laboratory findings demonstrate the claimant has a medically determinable impairment,[56] the ALJ must then determine whether that impairment is severe.[57]

The severity determination is discussed in terms of what is *not* severe.[58] A medically determinable impairment is not severe if the "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to

---

[55] 3 Soc. Sec. Law & Prac. § 36:26, Consideration of objective medical evidence (2019). *See also* 20 C.F.R. §§ 416.902(k), 416.913(a)(1).

[56] "Signs means one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from [a claimant's] statements (symptoms)." *Id.* § 416.902(l).

> Laboratory findings means one or more anatomical, physiological, or psychological phenomena that can be shown by the use of medically acceptable laboratory diagnostic techniques. Diagnostic techniques include chemical tests (such as blood tests), electrophysiological studies (such as electrocardiograms and electroencephalograms), medical imaging (such as X–rays), and psychological tests.

*Id.* § 416.902(g).

[57] *See* Soc. Sec. Ruling (SSR) 85-28 at *3 (1985).

[58] *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

1    work."[59] Because step two is simply to screen out weak claims,[60] "[g]reat care

2    should be exercised in applying the not severe impairment concept."[61]

3        2.    The ALJ's findings

4        The ALJ articulated the following reasoning as to his consideration of

5    Plaintiff's reproductive health issues:

> I considered the claimant's other diagnosed and alleged conditions, specifically including right wrist pain, acute pelvic inflammatory disease, adenomyosis, dysmenorrhea, ankle sprain, anemia, and plantar fasciitis (Exhibits C4F, pp. 7, 11; C5F, pp. 6, 10; C7F, pp. 14, 71). I find there is minimal clinical evidence to corroborate or support the finding of significant impact on the claimant's ability to perform work-related activities as a result of these impairments, considered individually or in combination. These conditions appear sparingly in the record, have been described as mild, or have otherwise resolved within a 12-month period. The claimant has urged that her menstrual period lasts up to ten days per month now with severe worsening symptoms such that she is unable to move. Although the record shows reports to providers indicating worsening menstruation issues, the record does not establish findings or even allegations of sustained limitations longer than 12 months in duration. Moreover, there is relatively recent evidence her menstrual cycles last significantly less time than she has alleged (Exhibit C5F, p .6).[62]

15    The ALJ noted that "[t]here remains a paucity of medical opinion evidence

16    supporting the claimant's allegations."[63]  He went on to consider the medical

---

[59] *Id.*; *see* SSR 85-28 at *3.

[60] *Smolen*, 80 F.3d at 1290.

[61] SSR 85-28 at *4.

[62] AR 22.

[63] AR 26.

opinions of the state agency evaluators, stating:

> At the initial and reconsideration determination levels, the state agency medical consultants determined the claimant could perform exertionally light work with essentially the same limitations as found in the Prior Decision (Exhibits C9A, C11A). The consultants reasoned the totality of the evidence did not support worsening, and in fact represented some improvement in fibromyalgia symptoms with Cymbalta medication (Exhibit C9A, p. 3). This is consistent with the totality of the record, including the general lack of abnormal objective and observational findings and the claimant's activity level. These opinions are generally persuasive.[64]

3.    <u>Relevant medical records</u>

On October 4, 2021, Plaintiff presented to Carol Freeman, FNP, of Tri-Cities Community Health for pain and severe cramping associated with adenomyosis.[65] FNP Freeman noted that Plaintiff had been diagnosed with adenomyosis in January 2020 in the ER and was sent for a consultation but hysterectomy was not recommended.[66] She noted that Plaintiff was requesting a hysterectomy and reporting very bad pain and heavy bleeding during menses, lasting 5-6 days.[67] On

---

[64] AR 27.

[65] AR 418. Adenomyosis is a condition in which the lining of the uterus grows into the uterine wall, causing the uterus to thicken and enlarge, and causing painful periods, heavy bleeding and pelvic pain. Cleveland Clinic, Adenomyosis, www.clevelandclinic.org (last viewed February 21, 2025.)

[66] AR 419.

[67] *Id.*

examination, Plaintiff had heavy, clear discharge and her uterus was enlarged to 8 week size.[68] FNP Freeman diagnosed dysmenorrhea and referred Plaintiff for consult with a surgeon, Dr. Williams, regarding hysterectomy.[69]

On October 12, 2021, at a follow up with Jesus Marcelo, MD, it was noted that Plaintiff had a diagnosis of fibromyalgia, and uterine adenomyosis with severe pain and had an appointment scheduled with a surgeon Dr. Williams.[70] An ultrasound performed on October 20, 2021, indicated a retroverted uterus, ill-defined endometrium with 7 mm thickness, and an impression of adenomyosis.[71]

On April 20, 2022, Plaintiff presented to Dr. Marcelo and was assessed with fatigue and muscle spasms.[72] She was noted to be in moderate distress.[73]

On July 22, 2022, Plaintiff presented to Leilani Weaver, ARNP, at Whitman Medical Clinic in Colfax, to establish care after moving.[74] ARNP Weaver noted that Plaintiff had been seen in the ER on July 10, 2022, by Dr. Vance and was found to be suffering from bladder stones and also found to be anemic with a hemoglobin

---

[68] AR 420.

[69] *Id.*

[70] AR 422.

[71] AR 529.

[72] AR 458.

[73] *Id.*

[74] AR 448.

DISPOSITIVE ORDER - 17

level of 8.6 and a hematocrit of 30.0.[75] Plaintiff reported being diagnosed with endometriosis/adenomyosis in 2020, and experiencing regular menstrual cycles of 5-6 days with heavy cramps and significant bleeding.[76] ARNP Weaver assessed kidney stones, bladder stones, eczema, endometriosis, fibromyalgia, and plantar fasciitis.[77] ARNP Weaver noted that she spoke with a specialist who recommended starting Plaintiff on vitamin B-12 and folic acid supplements, 3 infusions of iron sucrose 300 mg with 1 100 mg infusion per week, and then rechecking levels.[78] ARNP Weaver diagnosed current issues as anemia; dysmenorrhea, likely the cause of anemia; and fatigue.[79]

On February 4, 2023, Plaintiff presented to Fermin Godinez, MD, of the Providence Health Care ER.[80] Plaintiff reported left lower quadrant abdominal pain since February 2, 2023, and reporting that at an ER visit on February 2, 2023,

---

[75] *Id.*  A normal hematocrit level for an adult female is 36 to 44, and a normal hemoglobin level for an adult female is 11.6 to 15. Cleveland Clinic, Hematocrit Test, www.clevelandclinic.org (last viewed February 21, 2025.)

[76] *Id.*

[77] AR 448-449.

[78] AR 452.

[79] AR 452-453.

[80] AR 465.

DISPOSITIVE ORDER - 18

her labs and ultrasound imaging were normal but a CT scan was recommended.[81] Plaintiff presented to follow-up with the CT scan, as pain had persisted.[82] On examination, Plaintiff's abdomen was tender to palpation.[83] A CT scan of the abdomen resulted in the following findings: "Fluid-filled tubular structure in the left lower quadrant with markedly enhancing wall, concerning for salpingitis versus tubo-ovarian abscess. Enhancement of the uterus with prominent endometrium is also noted. Surgical consultation recommended."[84] Plaintiff was admitted as an inpatient and treated non-surgically with IV antibiotics.[85] On discharge, Plaintiff was assessed with acute pelvic pain, acute salpingitis, and acute pelvic inflammatory disease.[86] When discharged, Plaintiff requested that she be continued with her prescriptions on discharge for adenomyosis management.[87]

On March 6, 2023, Plaintiff presented to Tina Branson, PA-C, of Kadlec Clinic Associated Physicians for Women for follow-up.[88] Plaintiff reported that her

---

[81] AR 466.

[82] *Id.*

[83] AR 469.

[84] AR 470.

[85] AR 470-471.

[86] AR 476.

[87] AR 483.

[88] AR 463.

pelvic pain had resolved after a two-week treatment with antibiotics.[89] A comparison transvaginal pelvic ultrasound indicated that the prior hydrosalpinx was not seen.[90]

On September 27, 2021, state agency evaluator, Robert Stuart, MD reviewed Plaintiff's file at the initial level.[91] At the time that Dr. Stuart reviewed the file, there were no medical records yet in evidence from Providence Hospital, where Plaintiff had been treated for and diagnosed with adenomyosis/endometriosis.[92] Dr. Stuart opined that Plaintiff had the following RFC: occasionally lift and carry up to 20 pounds; frequently lift and carry up to 10 pounds; frequently stoop; occasionally climb ramps and stairs, climb ladders or scaffolds; kneel, crouch or crawl; limited reaching overhead with her right arm; and avoid even moderate exposure to extreme cold or hazards.[93] Dr. Stuart gave the following explanation regarding his opined RFC:

> Records show claimant with significant disability-seeking mindset. There is no evidence of any fractures since ALJ decision. No evidence of adenomyosis, evaluation for Crohn's, or any abdominal pain in MER. In fact all recent notes show claimant denying any abdominal pain or problems. Exams purporting to indicate fibromyalgia tender points are invalid since no control points were tested and there is not

---

[89] *Id*.

[90] AR 465.

[91] AR 161.

[92] AR 156.

[93] AR 160-161.

the required evidence of chronic fatigue and exclusion of other causes. The claimant is deemed capable of at least the RFC as written.[94]

On June 14, 2022, state agency evaluator, Glenn Gade, MD, reviewed Plaintiff's file at the reconsideration level.[95] At the time that Dr. Gade reviewed Plaintiff's file, there remained no evidence of records from Providence Health Services, where Plaintiff had been treated for and diagnosed with adenomyosis/endometriosis.[96] Additionally the medical records from Tri-Cities Community Health had been recently received but not added to the file.[97]

Dr. Gade adopted Dr. Stuart's opined RFC.[98] Dr. Gade offered an explanation of his opined RFC that was identical to Dr. Stuart's, stating:

> Records show claimant with significant disability-seeking mindset. There is no evidence of any fractures since ALJ decision. No evidence of adenomyosis, evaluation for Crohn's, or any abdominal pain in MER. In fact all recent notes show claimant denying any abdominal pain or problems. Exams purporting to indicate fibromyalgia tender points are invalid since no control points were tested and there is not the required evidence of chronic fatigue and exclusion of other causes. The claimant is deemed capable of at least the RFC as written.[99]

---

[94] AR 161.

[95] AR 172.

[96] AR 167.

[97] *Id.*

[98] AR 171-172.

[99] AR 172.

1

4.    <u>Analysis</u>

2

The ALJ's analysis of Plaintiff's adenomyosis was cursory and flawed.  First,

3

the ALJ made a conclusory finding that Plaintiff's condition would cause only mild

4

symptoms and would cause no limitation on Plaintiff's ability to perform work

5

activities.[100] At no point in the decision did the ALJ address the objective findings

6

in the medical record, including ultrasound imaging showing that Plaintiff's uterus

7

was enlarged or that the wall had significant thickening.[101] Laboratory tests

8

indicated that Plaintiff suffered from an acutely low hematocrit and hemoglobin

9

level, which ARNP Weaver opined was related to her adenomyosis.[102]  Both FNP

10

Freeman and Dr. Marcelo noted that Plaintiff experienced severe pain.[103] There is

11

no indication that the ALJ considered that the level of Plaintiff's pain was severe

12

enough that she requested on at least three occasions that a radical hysterectomy

13

surgery be scheduled.[104]

14

Moreover, the ALJ's reasoning that the condition did not last for a minimum

15

of twelve months is not supported by the record.  Plaintiff's adenomyosis was

16

diagnosed in January 2020, was treated regularly, and was still considered acute

17

_____

18

[100] AR 22.

19

[101] AR 420, 529.

20

[102] AR 448, 452-453.

21

[103] AR 419, 422.

22

[104] AR 420, 422, 448.

23

1    by her medical provides as late as 2023.[105] It clearly met the durational

2    requirements to meet the threshold of a severe impairment.

3        The ALJ's assertion that there was a paucity of medical opinion evidence

4    was correct.  But that fact detracts from rather than supports the Commissioner's

5    position that the decision was supported by substantial evidence.

6        It is of note that Plaintiff's impairments are equally, if not primarily,

7    physical rather than psychological in nature.  While Plaintiff was scheduled to

8    attend a psychological consultative examination with PMHNP Lewis, there was no

9    consultative examination scheduled to evaluate Plaintiff's physical limitations.

10       There were only two medical opinions considered by the ALJ regarding

11   Plaintiff's exertional limitations – those of Dr. Stuart and Dr. Gade.[106] As

12   Plaintiff's counsel noted at the hearing, the medical evidence regarding

13   adenomyosis was not present in the file at the time that the doctors reviewed the

14   file.[107] Both Dr. Stuart and Dr. Gade stated that they saw no medical evidence in

15   the file regarding Plaintiff's adenomyosis.[108]

16       Effectively, the ALJ discounted Plaintiff's condition as non-severe at step

17   two without benefit of any medical opinion regarding that impairment and without

18   _____

19   [105] AR 419, 420, 422, 529, 458, 448, 452, 465, 466, 469, 470, 476, 483.

20   [106] AR 27.

21   [107] AR 62.

22   [108] AR 161, 172.

23

DISPOSITIVE ORDER - 23

addressing any of the medical evidence regarding it, beyond a mere recitation that it had been diagnosed.  This is error, as the ALJ has failed to develop the record as to the impairment and has failed to properly consider it.

"The ALJ always has a special duty to fully and fairly develop the record" to make a fair determination as to disability, even where, as here, "the claimant is represented by counsel."[109] This "affirmative responsibility to develop the record" is necessary to ensure that the ALJ's decision is based on substantial evidence.[110]

5.  <u>Summary</u>

The ALJ's failure to properly consider Plaintiff's adenomyosis was consequential.   The condition, though intermittent, might have caused frequent absences when acute.  Moreover, there was no medical opinion from any source that considered the records regarding this condition, and the ALJ's reliance on the medical opinions of the state agency evaluators was misplaced.  For that reason, the Court concludes that remand is warranted.

**B.    Medical Opinion: Plaintiff establishes consequential error.**

As indicated above, the ALJ erred in relying on the medical opinions of Dr. Stuart and Dr. Gade because crucial evidence had not yet been submitted at the time that they reviewed the file.

---

[109] *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003) (cleaned up).

[110] *Id.* at 1184.

Because no medical opinion was rendered from a medical source that had considered the new impairments alleged, it is necessary for the ALJ to develop the file by either obtaining an opinion or calling a medical expert to testify. Remand is warranted.

**C.    Plaintiff's Subjective Complaints and Third-Party Witness Statements: The Court finds the issue moot.**

Plaintiff argues the ALJ failed to properly evaluate her testimony and the testimony of her partner. As discussed above, the ALJ failed to properly consider the medical opinion evidence.  Because the Court has remanded the case for consideration of the record as a whole, the Court finds this issue is moot.

**D.    Remand for Further Proceedings**

Plaintiff submits a remand for payment of benefits is warranted. The decision whether to remand a case for additional evidence, or simply to award benefits, is within the discretion of the court."[111] When the court reverses an ALJ's decision for error, the court "ordinarily must remand to the agency for further proceedings."[112]

---

[111] *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).

[112] *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke*  379 F.3d at  595 ("[T]he proper course, except in rare circumstances, is to remand to the agency for

The Court finds that further development is necessary for a proper disability determination. The ALJ is to obtain a medical opinion from a source who has been afforded an opportunity to review the complete medical record, and the ALJ is to then make findings at each of the five steps of the sequential evaluation process.

### IV.    CONCLUSION

Accordingly, **IT IS HEREBY ORDERED**:

1.    The ALJ's nondisability decision is **REVERSED**, and this matter is **REMANDED** to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

2.    The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 17 and 18**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 26th day of February, 2025.

_____
EDWARD F. SHEA
Senior United States District Judge

_____

additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).